# Exhibit C

Case 6:11-cv-00287-LED Document 126-2 Filed 09/09/11 Page 2 of 15 PageID #: 516

Alternative Delivery Solutions, Inc. v. R.R. Donnelley & Sons Co., Not Reported in...

2005 WL 1862631
Only the Westlaw citation is currently available.
United States District Court,
W.D. Texas, San Antonio Division.

ALTERNATIVE DELIVERY SOLUTIONS,
IND., a/k/a ADS Media Group, Inc., Plaintiff,
v.
R.R. DONNELLEY & SONS
COMPANY and Laboratorio Lito
Color S.A. De C .V., Defendants.

No. Civ.SA05CA0172-XR. | July 8, 2005.

**Attorneys and Law Firms**

Edward F. Valdespino, Stephen Taylor Dennis, Strasburger & Price, LLP, San Antonio, TX, for plaintiff.

Brett W. Schouest, Ramon A. Molina, Michael B. Goldberg, Cox, Smith, Matthews Incorporated, Bennett L. Stahl, Loeffler, Jonas & Tuggey, LLP, San Antonio, TX, for defendants.

**Opinion**

### ORDER

RODRIGUEZ, J.

*\*1* On this date, the Court considered Defendant R.R. Donnelley & Sons Company ("Donnelley")'s Motion to Dismiss (docket no. 5) and Defendant Laboratorio Lito Color ("LLC")'s Motion to Dismiss (docket no. 6) and the various responses and replies thereto.

### I. Facts & Procedural Background

On December 9, 2004, Plaintiff Alternative Delivery Solutions a/k/a ADS Media Group, Inc ("ADS") filed this suit against Defendants Donnelley and LLC in state court in Bexar County alleging breach of contract, fraud, fraudulent inducement, and negligent misrepresentation. According to the petition, Plaintiff and "Defendant" entered into a partnership agreement and corresponding mutual nondisclosure agreement, under which Donnelley and ADS would share resources to commercialize and promote a project called "La Canasta" and that ADS would share in 40% of the profits, while Donnelley would share in 60% of the profits. Although Plaintiff's petition refers to Donnelley, the agreement was signed by ADS and LLC. LLC is a Mexican company based in San Juan Del Rio, State of Queretero, Mexico. LLC is a wholly owned subsidiary of R.R. Donnelley Mexico, S.A. de C.V., another Mexican corporation, which, in turn is a wholly owned subsidiary of Defendant Donnelley. Under the agreement, the parties contemplated a joint venture for the printing and distribution of high-quality, color advertisements for distribution in Mexican markets. LLC would print the ads at its facility in Mexico and ADS would seek out and secure advertisers who sell products in Mexico. Plaintiff alleges that Donnelley has failed to perform under the agreement, and sues for breach of contract. In addition, Plaintiff alleges that Donnelley made representations to ADS to induce ADS to enter into the business opportunity, but never intended to engage in the business opportunity. Thus, Plaintiff sues for common-law fraud, fraudulent inducement, and negligent misrepresentation. Plaintiff further alleges that Donnelley and LLC are a single business enterprise and should be held jointly and severally liable. Last, Plaintiff alleges that Donnelley and LLC are alter egos.

Defendant Donnelley timely removed this suit to this federal court on the basis of diversity of citizenship. Donnelley was served with process on its registered agent, CT Corporation. Plaintiff attempted substitute service for LLC via service on the Texas Secretary of State; however, Defendants assert that LLC has not yet been served.

Although it has not been served, Defendant LLC has filed a motion to dismiss pursuant to Rule 12(b)(2) for lack of personal jurisdiction, 12(b)(5) for insufficient service of process, and 12(b)(6) based on the existence of a forum selection clause in the agreement requiring ADS to bring its claims in Mexico City. Though it is not a signatory to the agreement, Defendant Donnelley has also filed a motion to dismiss based on the forum selection clause, arguing that Plaintiff's suit should be dismissed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction, 12(b)(3) for improper venue, 12(b)(6) for failure to state a claim, and under 28 U.S.C. § 1404(a).

Case 6:11-cv-00287-LED Document 126-2 Filed 09/09/11 Page 3 of 15 PageID #: 517

Alternative Delivery Solutions, Inc. v. R.R. Donnelley & Sons Co., Not Reported in...

## II. LLC' Motion to Dismiss Based on Insufficient Service of Process

**\*2** Plaintiff attempted to serve Defendant LLC by utilizing the Texas long-arm statute's authorization for substitute service on the Texas Secretary of State. Service on a corporation in a foreign country in a federal court is governed by Federal Rule of Civil Procedure 4(h). Rule 4(h)(2) incorporates the service methods in Rule 4(f) and directs that service *in a place not within any U.S. judicial district* may be effected pursuant to any internationally agreed means, including the Hague Convention. Despite the fact that Mexico is a signatory to the Hague Convention, Plaintiff did not serve LLC pursuant to Rule 4(h)(2). [1] Rather, Plaintiff served process on LLC via the Texas Secretary of State pursuant to Rule 4(h)(1), which incorporates Rule 4(e)(1) and allows a plaintiff to serve a foreign corporation *within a judicial district of the United States* pursuant to the law of the state in which the district court is located. Thus, Plaintiff has attempted to serve Defendant LLC "within a judicial district of the United States" by substitute service on the Texas Secretary of State under Texas law.

Texas law provides that the Secretary of State "is an agent for service of process on a nonresident who engages in business in this state, but does not maintain a regular place of business in [Texas] or a designated agent for service of process, in any proceeding that arises out of the business done in [Texas] and to which the nonresident is a party." TEX. CIV. PRAC. & REM.CODE § 17.044(b). Under this law, the Secretary of State must send notice of service of process to a nonresident defendant via registered mail. *Id.* § 17.045(a), (d). Because the Secretary must mail the notice to Mexico, this transmittal of service documents abroad implicates the Hague Convention and its requirements.

Plaintiffs rely on *International Transaction, Ltd. v. Embotelladora Agral Regionmontana S.A. de C.V.,* 277 F.Supp.2d 654 (N.D.Tex.2002), in which the district court held that substitute service on the Texas Secretary of State on a Mexican corporation was permissible under the Texas Rules of Civil Procedure, comported with the Hague Convention, and did not violate the due process clause. *Id.* at 661. However, though there is disagreement among the circuits on the issue, the Fifth Circuit has held that the Hague Convention does not permit service by mail. *Nuovo Pignone v. Storman Asia M/V,* 310 F.3d 374, 384 (5th Cir.2002). In addition, by virtue of the Supremacy Clause, the Convention preempts inconsistent methods of service prescribed by state law in all cases to which it applies. *Volkswagenwerk Aktiengesellschaft v. Schlunk,* 486 U.S. 694, 699, 108 S.Ct. 2104, 100 L.Ed.2d 722 (1988). Thus, service via the Texas Secretary of State is insufficient because it requires service by mail, which fails to comply with the Hague Convention under Fifth Circuit law.

Defendant, however, does not argue that service is improper in this case because service by mail fails to comply with the Hague Convention, and thus the Court deems this argument waived. Rather, Defendant LLC argues that substitute service on the Secretary of State is insufficient in this case because LLC was not doing business in Texas such that the Secretary of State could properly be considered its agent. This argument requires an analysis of whether the Court has personal jurisdiction over Defendant LLC. Plaintiff argues that service on the Secretary as an agent for LLC was proper because LLC is subject to personal jurisdiction in Texas. However, because the Court finds the forum selection clause issue to be dispositive, it need not consider the personal jurisdiction issue. [2]

## III. LLC's Motion to Dismiss based on the Forum Selection Clause

**\*3** Defendant LLC moves to dismiss pursuant to Rule 12(b)(6) because the dispute is subject to a valid forum selection clause. LLC contends that it is proper for the Court to consider the forum selection clause in the context of a Rule 12(b)(6) motion because ADS attached the Agreement that contains the clause to its Petition, and thus the basis for dismissal is apparent from the Plaintiff's complaint. Plaintiff argues that Defendant's forum-selection-clause defense should be held waived because, in failing to bring its motion to dismiss under Rule 12(b)(3), Defendant failed to invoke the proper procedural tool in its first responsive pleading and has thus waived the defense. Plaintiff contends that, while case law may exist from other jurisdictions stating that a 12(b)(6) motion is a proper tool to invoke dismissal based on a forum selection

clause, district courts in the Fifth Circuit have found that Rule 12(b)(3) is the proper procedure for bringing such a defense. Alternatively, Plaintiff argues that if the Court finds it proper to treat the motion as one under 12(b)(3), the Court should allow it to carry its burden by setting forth facts that, taken as true, establish venue. Plaintiff contends that the Court should not enforce the forum selection clause because its incorporation into the agreement was a product of fraud, because it violates Plaintiff's fundamental constitutional right to a trial by jury, because the selected forum has no connection to any party, and because the selected forum will not provide ADS with an adequate remedy.

### A. Waiver

In 1997, the Fifth Circuit declined to reach the "enigmatic question of whether motions to dismiss on the basis of forum selection clauses are properly brought as motions under Fed.R.Civ.P. 12(b)(1), 12(b)(3), or 12(b)(6), or 28 U.S.C. § 1406(a)." [3] *Haynsworth v. The Corporation,* 121 F.3d 956, 961 (5th Cir.1997). More recently, in *Lim v. Offshore Specialty Fabricators, Inc.,* 404 F.3d 898, 902 (5th Cir.2005), the Fifth Circuit again discussed the proper procedural vehicle for asserting a motion to dismiss based on a forum selection clause:

> Our court has noted, but declined to address, the "enigmatic question of whether motions to dismiss on the basis of forum selection clauses are properly brought as motions under Fed.R.Civ.P. 12(b)(1) [or] 12(b)(3)...." In any event, our court has treated a motion to dismiss based on a forum selection clause as properly brought under Rule 12(b)(3) (improper venue). We have also affirmed, without comment on procedural posture, a district court's granting a Rule 12(b)(3) motion to dismiss based on a forum selection clause. And, other circuits agree that a motion to dismiss based on an arbitration or forum selection clause is proper under Rule 12(b)(3).
>
>> Although circuits are split on the issue of whether Rule 12(b)(1) or 12(b)(3) is the proper motion for seeking dismissal based on a forum selection or arbitration clause, neither side has substantively briefed the merits of the question. Because *our court has accepted Rule 12(b)(3) as a proper method for seeking dismissal based on a forum selection clause,* we need not decide whether a Rule 12(b)(1) motion would be appropriate.

*\*4 Id.* at 902 (citations omitted and emphasis added). Thus, the Court very recently acknowledged that it has accepted Rule 12(b)(3) as a proper method for seeking dismissal based on a forum selection clause, and this Court likewise accepts it as a proper method as Plaintiff urges.

The fact that the Fifth Circuit has accepted Rule 12(b)(3) as *a* proper method for seeking dismissal based on a forum selection clause does not rule out Rule 12(b)(6) as a possible vehicle in appropriate circumstances, however. Other circuits have concluded that Rule 12(b)(6) is a proper method for moving to dismiss pursuant to a forum selection clause. *See, e.g., Lambert v. Kysar,* 983 F.2d 1110, 1112 n. 1 (1st Cir.1993); *Instrumentation Assocs., Inc. v. Madsen Elecs.,* 859 F.2d 4, 6 n. 4 (3d Cir.1988). LLC contends that 12(b)(6) is proper in this case because the forum selection clause names a foreign location rather than a U.S. venue, and thus a 12(b)(3) venue analysis may be less applicable than a contractual analysis. And, LLC argues, all the necessary information is apparent from the pleadings because the contract containing the clause was attached to Plaintiff's petition. As noted, the Fifth Circuit has not expressly held that a Rule 12(b)(6) motion can never be an appropriate procedural vehicle, and thus it may be possible to consider a forum selection clause argument via a 12(b)(6) motion in the appropriate circumstances. However, because Plaintiff argues that the forum selection clause was procured by fraud, the Court must look beyond the pleadings to determine whether the clause is enforceable, thus going beyond the permissible scope of a 12(b)(6) motion. Accordingly, a 12(b)(6) motion is not an effective procedural vehicle in this case.

Defendant's failure to bring its motion to dismiss under 12(b)(3) is not fatal to its argument, however. Rule 12(b)(3) requires that an objection to venue must be raised either by a pre-answer motion to dismiss or in a responsive pleading. A Rule 12(b)(6) motion, in contrast, may be raised post-answer, including during trial on the merits. FED. R. CIV. P. 12(h)(2). Defendant's venue argument was raised in its first responsive pleading, as required for a 12(b)(3) motion. Accordingly, this Court will treat the motion

Case 6:11-cv-00287-LED Document 126-2 Filed 09/09/11 Page 5 of 15 PageID #: 519

Alternative Delivery Solutions, Inc. v. R.R. Donnelley & Sons Co., Not Reported in...

as one brought under Rule 12(b)(3). *See Mitsui & Co., Inc. v. M/V Mira,* 1996 WL 444193, at *1 (E.D.La. Aug.7, 1996) ("A motion to dismiss premised on the enforcement of a forum selection clause will be treated as a 12(b)(3).") (citing *Arguetta v. Banco Mexico,* 87 F.3d 320, 324 (9 [th] Cir.1996)), *aff'd,* 111 F.3d 33 (5 [th] Cir.1997).

Plaintiff's reliance on *Albany Ins. Co. v. Almacenadora Somex, S.A.,* 5 F.3d 907 (5 [th] Cir.1992), to support its waiver argument is misplaced. In that case, the Court held the defendant's forum-selection-clause argument waived because, though the defendant moved to dismiss pursuant to Rule 12(b)(3), the defendant "chose not to expound upon its improper venue claim beyond simply stating that venue was improper." Accordingly, when the defendant attempted to raise improper venue based on the forum selection clause in its second motion, the Court held the argument waived. In contrast, Defendant LLC has raised venue and extensively argued the basis for dismissal based on the forum selection clause in its first responsive pleading. Accordingly, Defendant's failure to expressly bring its motion to dismiss based on the forum selection clause as a motion under 12(b)(3) does not result in waiver.

### B. Does the Forum Selection Clause Apply?

**\*5** The court must next determine whether the clause applies to the types of claims asserted by ADS. The Joint Venture Agreement was entered into between LLC, as managing partner, and ADS, as contributing partner, "to market and promote the project known as LA CANASTA." The purpose of the Agreement was stated as: "The Managing Partner and Contributing Partner shall join efforts and resources to distribute and market the LA CANASTA project, which is made a part of this agreement as schedule A hereto." The effective term of the agreement was to be five years. Clause 23, entitled "Applicable Law and Forum Selection," states: "To resolve any dispute arising in connection with the interpretation or performance of this agreement, the parties submit unconditionally to the laws and jurisdiction of the competent courts of law sitting in Mexico City, expressly waiving any other forum to which they may be entitled by reason of their present or future domiciles." Because the parties expressly waived any other forum, the forum selection clause is exclusive and mandatory. Plaintiff's claims arise "in connection with the interpretation or performance of" the agreement, and thus fall within the scope of the forum selection clause.

### C. Should the clause be enforced?

The proper law to apply to questions regarding the enforceability of forum selection clauses is federal, whether jurisdiction be based on diversity, federal question, or a combination of the two. *Haynsworth v. The Corporation,* 121 F.3d 956, 962 (5 [th] Cir.1997). Courts must presumptively enforce forum selection clauses in international transactions out of concern for comity and to promote international trade and commerce. *Id.* The Fifth Circuit has consistently followed this rule. *Id.* The presumption of enforceability may be overcome, however, by a clear showing that the clause is " 'unreasonable' under the circumstances." *Id.* at 963 (citing *M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 10, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972)). Unreasonableness potentially exists where (1) the incorporation of the forum selection clause into the agreement was the product of fraud or overreaching; (2) the party seeking to escape enforcement "will for all practical purposes be deprived of his day in court" because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of the forum selection clause would contravene a strong public policy of the forum state. *Haynsworth,* 121 F.3d at 963 (citing *Carnival Cruise Lines,* 499 U.S. at 595; *The Bremen,* 407 U.S. at 12-13, 15, 18). The party resisting enforcement on these grounds bears a "heavy burden of proof." *Id.* (citing *The Bremen,* 407 U.S. at 17).

#### 1. Fraud

Plaintiff first argues that the clause should not be enforced because it was procured as a result of fraud. Fraud may invalidate a forum selection clause, but only if the inclusion of that clause, as opposed to the signing of the entire contract, was the product of fraud. As the Supreme Court explained in *Scherk v. Alberto-Culver,* 417 U.S. 506, 519 n. 14, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974), the concern it had expressed in *M/S Bremen* regarding enforcing such clauses in suits alleging fraud "does not mean that any time a dispute arising out of

Case 6:11-cv-00287-LED Document 126-2 Filed 09/09/11 Page 6 of 15 PageID #: 520

Alternative Delivery Solutions, Inc. v. R.R. Donnelley & Sons Co., Not Reported in...

a transaction is based upon an allegation of fraud ... the clause is unenforceable. Rather, it means that an arbitration or forum-selection clause in a contract is not enforceable if the inclusion of that clause in the contract was the product of fraud or coercion." Thus, the mere allegation of fraudulent conduct does not suspend operation of a forum selection clause. Rather, the proper inquiry is whether the forum selection clause is the result of fraud in the inducement of the forum selection clause itself. *See* [Afram Carriers, Inc. v. Moeykens,](#) 145 F.3d 298, 302 n. 3 (5th Cir.1998) (party claiming fraud must show that inclusion of forum selection clause itself, not the entire agreement, was a product of fraud).

 *\*6* ADS states that the basis for its claims "can be summed up by stating that Donnelley and Lito Color fraudulently induced ADS into signing an agreement to develop a program called La Canasta." Plaintiff's Response (docket no. 12) at 1. Plaintiff alleges that, despite the fact that all negotiations had been with Donnelley representatives, "Donnelley employees presented ADS with a contract involving a company named Lito Color. In fact, this was the first time that ADS became aware of Lito Color. However, at all times, Donnelley employees assured ADS that they were contracting with Donnelley. Based on the above assurances, ADS signed the agreement believing that the contractual relationship was with Donnelley." ADS further alleges that, "during the entire negotiation process, Buzali and Arcos assured ADS that they were contracting with Donnelley and that Donnelley would take care of ADS if any problems arose. In fact, as the negotiations relate to the foreign forum selection clause, to ease ADS's concerns about this clause, Donnelley represented to ADS that it would not seek to enforce such a provision. Rather, Donnelley again made the assurances that ADS would be taken care of if something went wrong." After the contract was signed, Plaintiff asserts that it began questioning Donnelley's commitment to the contract and took action to determine the status of the contract by contacting Donnelley, but Donnelley failed to reply. ADS then contacted Donnelley at its corporate office in Chicago to see if it was going to honor the contract, and someone from Donnelley stated they would investigate and get back to ADS. After some time, ADS received correspondence from Donnelley indicating that it was not going to honor the contract. Further, ADS asserts, "Buzali mockingly stated to an ADS employee that 'you will have to come to Mexico to enforce this contract. You'll never see anything." ' ADS eventually brought this suit.

Plaintiff's allegations concerning fraudulent inducement with regard to the entire contract will not suspend operation of the forum selection clause contained therein. Thus, Plaintiff's allegations that Donnelley assured ADS that it was contracting with Donnelley and that Donnelley would "take care of" ADS if something went wrong, which go to the Plaintiff's fraudulent inducement to sign the contract argument, are insufficient to invalidate the clause. However, ADS also makes one allegation specific to the forum selection clause-that Donnelley assured ADS that despite its inclusion in the contract, the forum selection clause would not be enforced. Thus, the relevant inquiry is whether this allegation is sufficient to suspend operation of the forum selection clause on the basis of fraud.

LLC argues that ADS's contention that it was induced by fraud into agreeing to the Mexico City forum selection clause is not supported by evidence meeting the "heavy burden" requirement, and "indeed is so unsupported by evidence that the contention must be summarily disregarded." Defendant complains that ADS "offers only the uncorroborated affidavit of Jim Schell" and dismisses ADS's argument that Donnelley represented to ADS that it would not seek enforcement of the clause on the basis that Donnelley was not a party to the Agreement. Further, relying on [Town North National Bank v. Broaddus,](#) 569 S.W.2d 489 (Tex.1978) and [Manetti-Farrow, Inc. v. Gucci America, Inc.,](#) 858 F.2d 509, 514 (9th Cir.1988), LLC argues that the parol evidence rule precludes the very evidence offered by ADS in the absence of a showing by ADS that it was somehow duped into signing the agreement by some kind of trickery or artifice. LLC argues that "ADS's vague suggestion that some unnamed Donnelley agent may have stated that the forum selection clause would not be enforced is insufficient under the parol evidence rule to warrant discarding the forum selection clause on grounds of fraud."

 *\*7* The parol evidence rule excludes evidence of a prior or contemporaneous oral agreement between the parties to a written contract if such evidence changes

or contradicts the terms of a written contract. However, under Texas law, parties challenging contracts as fraudulently induced may rely on evidence of oral promises or agreements to support their claims. *Dunbar Medical Sys. ., Inc. v. Gammex, Inc.,* 216 F.3d 441, 452 (5th Cir.2000) (citing *Santos v. Mid-Continent Refrigerator Co.,* 471 S.W.2d 568, 569 (Tex.1971)) (per curiam) ("The parol evidence rule will not prevent proof of fraud or mutual mistake.")). To prove fraudulent inducement, a party must show: (1) a false material representation; (2) known to be false or made without knowledge of the truth; (3) which was intended to be acted upon; (4) was relied upon; and (5) caused injury. *Formosa Plastics Corp. USA v. Presidio Eng'rs,* 960 S.W.2d 41, 47-48 (Tex.1998).

While *Manetti-Farrow* recognizes that the parol evidence rule generally precludes introduction of evidence that preceded the contract formation to show that the parties intended something other than what is stated in the written contract, it is not particularly instructive in this case since there was no allegation of fraud. The Texas Supreme Court's decision in *Broaddus* involved the question whether "in a suit by one not a holder in due course against the maker of a promissory note, the parol evidence rule prohibits the admission of extrinsic evidence showing that the maker was induced to sign the note by the payee's representations that the maker would not incur liability on the note." *Broaddus,* 569 S.W.2d at 491. The Court held that the mere representation by a payee to the maker that the maker will not be liable on the note does not constitute fraud in the inducement so as to be an exception to the parol evidence rule. Rather, extrinsic evidence is permissible to show fraud in the inducement of a note only upon a showing of some type of trickery, artifice, or device employed by the payee in addition to the showing that the payee represented to the maker he would not be liable on the note. *Id.* at 493. Though *Broaddus* is somewhat analogous to the present case, some lower Texas courts have concluded that it is limited to the promissory note context. *See, e.g., JBV, Inc. v. Barkey,* 1997 WL 420785 (Tex.App.-Austin 1997, pet. denied) (listing cases). The Fifth Circuit also has recognized a distinction between negotiable instrument cases and other contracts: "Texas grants an exception to this [parol evidence] bar when a party seeks to offer parol evidence to show fraud in the inducement to enter into a contract. We note, however, that 'the exception is narrower when the contract is a promissory note.'" *FDIC v. Wallace,* 975 F.2d 227, 229 & 230 n. 5 (5th Cir.1992) (applying the *Broaddus* rule in all negotiable instrument cases, and noting that lower Texas courts are split as to whether the trickery requirement applies to all contract cases or is limited to those in which the contract is a promissory note).[4]

**\*8** However, the reasoning underlying the *Broaddus* decision emphasizes that contractual terms should not be disregarded based merely on one party's alleged assurance that the provision will not be enforced. If the parties had agreed not to enforce a provision in a contract, they could have stricken the provision from the contract. In a similar vein, in *DRC Parts & Accessories, LLC v. VM Motori, SPA,* 112 S.W.3d 854 (Tex.App.-Houston [14[th] Dist.] 2003, pet. denied), the Fourteenth Court of Appeals, sitting en banc, has held that reliance upon an oral representation that is directly contradicted by the express, unambiguous terms of a written agreement between the parties is not justified as a matter of law:

> This principle is also dictated by policy and practical considerations. If written contracts are to serve a purpose under the law, relative to oral agreements, it is to provide greater certainty regarding what the terms of the transaction are and that those terms will be binding, thereby lessening the potential for error, misfortune, and dispute.
>
> By contrast, the approach advocated by DRC and the dissent would, in effect, create a contractual relationship that is governed by its written contract only to the extent it does not contradict a previous oral agreement between the parties. This is because a party's exercise of a right under the written contract, which is contrary to the oral agreement, would subject that party to a fraudulent inducement claim based on the oral agreement. In that event, however, the party who entered into the written contract while relying on a contrary oral agreement would have thereby itself entered into the written contract with an intent not to perform it. Thus, in order to show its reliance on the oral agreement to sustain its own fraudulent inducement claim, that party would necessarily prove that it was guilty of fraudulent inducement as well.

Case 6:11-cv-00287-LED Document 126-2 Filed 09/09/11 Page 8 of 15 PageID #: 522

Alternative Delivery Solutions, Inc. v. R.R. Donnelley & Sons Co., Not Reported in...

The essential issue, then, is not whether that party's evidence of the contrary oral agreement is admissible or sufficient to prove that agreement, but instead whether the law will deem such reliance to be justified and thereby favor that party to the detriment of the other contracting party, which has at least declared its intent in the contract and sought to abide by its terms. Because such an approach would defeat the ability of written contracts to provide certainty and avoid dispute, the prevailing rule, recited above, is instead that a party who enters into a written contract while relying on a contrary oral agreement does so at its peril and is not rewarded with a claim for fraudulent inducement when the other party seeks to invoke its rights under the contract.

In this case, therefore, even assuming DRC's evidence to be admissible and sufficient to show its actual reliance on a contrary oral agreement, that reliance could not, as a matter of law, have been justified.

*Id.* at 858-59. Although the alleged representation by Donnelley that it would not seek to enforce the clause is not directly contrary to a provision in the contract in the sense that was present in *DRC,* in which the contract said "non-exclusive" and the plaintiff alleged that it had been told it would have exclusive rights, the reasoning is analogous. If ADS entered into the contract, which expressly stated the parties' intention to waive the right to bring suit in any forum other than Mexico City, while relying on the representations of Donnelley that such a provision would not be enforced, that reliance would not be reasonable as a matter of law.

**\*9** The Court has located two cases that lend some support to Plaintiff's position, but finds them to be distinguishable. In *Great Earth Companies, Inc. v. Simons,* 288 F.3d 878 (6th Cir.2002), the court held there was "no question that Great Earth fraudulently induced the Simonses to agree to the arbitral forum selection clause contained in Article 15.3, which provides that arbitration of disputes take place in New York." *Id.* at 890. The Southern District of New York had concluded that the Simonses had shown that the agreement to arbitrate outside of Michigan was induced by fraud, finding that Great Earth had fraudulently induced the Simonses to agree to the forum selection clause by knowingly misrepresenting in the Offering Circular that it would not seek arbitration outside of Michigan. The Offering Circular contained disclosures required by the Federal Trade Commission and the State of Michigan, and was accompanied by a sample franchise agreement. One of the disclosures contained in the Offering Circular, entitled an "Addendum for Michigan Franchisees," stated: "THE STATE OF MICHIGAN PROHIBITS CERTAIN UNFAIR PROVISIONS THAT ARE SOMETIMES IN [F]RANCHISE DOCUMENTS. IF ANY OF THE FOLLOWING PROVISIONS ARE IN THESE FRANCHISE DOCUMENTS, THE PROVISIONS ARE VOID AND CANNOT BE ENFORCED AGAINST YOU. .... (f) A provision requiring that arbitration or litigation be conducted outside this state." However, the Franchise Agreement did contain a provision requiring disputes to be arbitrated in New York. The Simonses argued that this statement was a knowing misrepresentation, because Great Earth knew at the time that it would attempt to enforce the Agreement's forum selection clause in the event of a dispute, notwithstanding its statement in the Offering Circular. Richard Simons testified at the hearing and stated that it was his understanding at the time he signed the Agreement that disputes would be arbitrated in Michigan. Although somewhat analogous, the plaintiffs' evidence supporting its fraudulent inducement claim was more substantial than in the present case. Presumably, the franchise agreement was a form agreement, the terms of which could be altered by particular state laws, and it could be reasonable for a party to rely on representations that state law trumped a provision in the form. In this case, however, the contract was not a form document, but was negotiable by the parties, and there was no representation concerning any controlling and contrary state law.

In *Pearcy Marine, Inc. v. Seacor Marine, Inc.,* 847 F.Supp. 57 (S.D.Tex.1993), the district court found fraud and/or overreaching:

The Plaintiff not only alleges that the Defendants fraudulently induced the contract and then refused to perform, but also that the Defendants fraudulently induced the Plaintiff to agree to the High Court of Justice as the exclusive forum. The Plaintiff alleges that most maritime towing agreements between

American shippers contain American choice of forum clauses and, indeed, that the three previous international charters between the parties stipulated an American forum. Nevertheless, the Defendants, after conducting an exhaustive and intimate study of the Plaintiff's books, records, and operations, for some reason elected to inject an English choice of forum clause into the instant contract. Furthermore, when the Plaintiff objected to this clause, the Defendants gave oral assurances of their intent to perform, essentially telling the Plaintiff not to worry about it. In the Court's mind these circumstances constitute, if not fraud, then certainly overreaching. The Plaintiff, strapped for cash, its deadline for fulfilling its obligations to the U.S. Military rapidly approaching, and possessing few or no alternatives to the instant contract to fulfill those obligations, had no choice but to accede to the English forum.

**\*10** *Id.* at 59-60. The court in that case did not conduct any analysis specific to its fraud finding, and it appears that the party inserting the clause took advantage of the plaintiff's financial situation to inject a clause that would make it more difficult for plaintiff to recover should litigation arise. As noted below, there is no such evidence of overreaching or coercion in this case.

Plaintiff's only allegation specific to the forum selection clause is the representation by an unnamed person at Donnelley that the forum selection clause in the agreement would not be enforced. Plaintiff has offered no evidence or even argument that, at the time this alleged statement was made, Donnelley intended not to fulfill its promise. Moreover, even assuming Donnelley did not intend to honor the alleged statement, reliance by ADS on the statement was not reasonable as a matter of law. Accordingly, ADS has failed to show that it was fraudulently induced into agreeing to the forum selection clause.

### 2. Overreaching

Plaintiff argues that the forum selection clause was not a freely negotiated agreement between parties of relatively equal bargaining power because Donnelley/Lito Color is part of the Donnelley Companies, a Fortune 500 company, while ADS is a small startup company created in 2001 by a small group of individuals "who were far less sophisticated."

Plaintiffs assert that "[c]learly, Donnelley/Lito Color took advantage of ADS's lack of sophistication by inducing ADS to sign the agreement with the forum selection clause based on the assurances that such clause would not be enforced. ADS, taking Donnelley/Lito Color at its word and knowing that Donnelley was a multibillion dollar company with a track record of proven success, signed the agreement with the forum selection clause. As a result, the disputed forum selection clause should be invalidated because of Donnelley/Lito Color's fraud in creating the clause and the unequal bargaining power exhibited by a Fortune 500 company over a small startup like ADS."

Although the Supreme Court has not expressly defined "overreaching," the Fifth Circuit has articulated the following definition: "Overreaching is that which results from an inequality of bargaining power or other circumstances in which there is an absence of meaningful choice on the part of one of the parties." *Haynsworth,* 121 F.3d at 965 n. 17. In *The Bremen,* a case involving an agreement between a Houston corporation and a German corporation that contained a forum selection clause that set venue in the courts of England, the Supreme Court stated, "The choice of that forum was made in an arm's length negotiation by experienced and sophisticated businessmen, and absent some compelling and countervailing reason it should be honored by the parties and enforced by the courts. *The Bremen,* 407 U.S. at 12.

LLC argues that ADS's claims of overreaching must be rejected. LLC points out that the Supreme Court and the Fifth Circuit have consistently upheld forum selection clauses between parties of unequal size and bargaining power. Moreover, LLC argues, the evidence does not support the contention that ADS was an unsophisticated party given Schell's affidavit testimony regarding the sophisticated nature of the negotiations and contemplated business dealings, as well as the background of ADS's principals.

**\*11** According to the submitted evidence, Jim Schell, the President of ADS, was the former Vice President of SBC before ADS, and had taken ADS, a national and international marketing company, public. Dub Doyal, the CEO of ADS, also had previous business experience as the former owner of the largest print and direct mail company in San Antonio. Further, the evidence indicates that the contract was the product

of voluntary, arm's-length negotiation, and Plaintiff was free to walk away from the contract. Certainly, Plaintiff's principals were aware of the clause, the language of which was clear and hard to ignore, and of its consequences, and could have insisted that the clause be stricken rather than simply trusting in Donnelley's proven track record and assurances. The mere fact that Plaintiff is a small corporation whereas Defendant Donnelley is a Fortune 500 company does not establish that Plaintiff did not have equal bargaining power in the contract negotiations, and Plaintiff has offered no other evidence to support its claim of overreaching. See *Int'l Software Sys. v. Amplicon, Inc.,* 77 F.3d 112, 116 (5th Cir.1996) (rejecting plaintiff's "David versus Goliath" argument that it was a small company with only twenty employees as "unconvincing"). In light of the evidence and applicable precedent, the Court concludes that Plaintiff has failed to meet its burden to establish that the clause should not be enforced because it was the product of overreaching by either Donnelley or LLC.

### 3. Right to Jury Trial

ADS argues that it requested a trial by jury in its original petition, but Mexican courts will not allow this case to be tried by a jury. Accordingly, ADS asserts that the clause should be void as against public policy. ADS relies on *DHX, Inc. v. Allianz Agf Mat,* 2002 WL 31421952 (C.D.Cal.2002), and unpublished decision that has not been cited by any other court. Although recognizing the Supreme Court's decision in *The Bremen,* the court in *DHX* agreed with the party's argument that a forum selection clause designating England as the forum could not be enforced because doing so would deprive the plaintiff of its statutory and constitutional right to a jury trial.

In reaching its conclusion, the court relied on *Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer,* 515 U.S. 528, 115 S.Ct. 2322, 132 L.Ed.2d 462 (1995). In *Vimar Seguros,* the Court considered whether a foreign arbitration clause designating Japan in a bill of lading was invalid under COGSA (the Carriage of Goods by Sea Act) because it lessens liability in the sense that COGSA prohibits. The Court held that foreign arbitration clauses in bills of lading are not invalid under COGSA in all circumstances. In reaching its holding, the Court rejected the plaintiff's argument that the increased costs and inconvenience associated with the foreign arbitration would lessen liability. It also rejected the argument that there was no guarantee that the foreign arbitrators would apply COGSA, which provides that the terms of a bill of lading may not relieve the carrier of the obligations or diminish the legal duties specified by the Act. The Court found this argument premature, because it was still unknown what law the arbitrator would apply, and in any event the district court retained jurisdiction and could ensure at the award-enforcement stage that the legitimate interest of the enforcement of the laws had been addressed. The Court stated, however, "[w]ere there no subsequent opportunity for review and were we persuaded that 'the choice-of-forum and choice-of-law clauses operated in tandem as a prospective waiver of a party's right to pursue statutory remedies ..., we would have little hesitation in condemning the agreement as against public policy." *Id.* at 540.

**\*12** In *DHX,* the court rejected the argument that the forum selection clause designating England as the forum for a dispute between an insured and its insurer implicitly waived the plaintiff's right to jury trial. The court noted that "DHX initially made a jury demand in its state court pleadings, and the insurance contract between the parties does not contain a jury waiver provision. Accordingly, this Court finds that DHX did not waive its right to a jury." The court continued: "[W]hile this Court recognizes that the *Bremen* decision presumptively validates forum selection clauses, Allianz has been unable to provide the court any post-*Sky Reefer* case law in support of its argument. It is clear that the agreement's choice of law and the choice of forum clauses work together to deprive DHX of its constitutional and statutory right to a trial by jury. Accordingly, under *Sky Reefer,* this Court must invalidate clause 25 of the agreement between the parties, and deny Allianz's motion to dismiss this case."

This Court declines to follow *DHX. Sky Reefer* involved rights under COGSA and did not concern the right to jury trial. Until the Supreme Court overrules it, *The Bremen* remains good law, and the Court has not found any other federal case in which a court has invalidated a foreign forum selection clause because the forum did not provide a jury trial. Moreover, it is not against public policy under either federal or Texas law for a party to waive its right to a

Case 6:11-cv-00287-LED Document 126-2 Filed 09/09/11 Page 11 of 15 PageID #: 525

Alternative Delivery Solutions, Inc. v. R.R. Donnelley & Sons Co., Not Reported in...

jury. *See, e.g., Scherk v. Alberto-Culver Co.,* 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974) (allowing parties to contract for foreign arbitration); *In re Prudential Ins. Co. of Am.,* 148 S.W.3d 124, 131 (Tex.2004) ("Public policy that permits parties to waive trial altogether surely does not forbid waiver of trial by jury."). To invalidate all forum selection clauses that designate forums that do not provide for a jury trial would implicate many of the comity concerns raised by the Supreme Court in *The Bremen* and other cases concerning international agreements. Further, Plaintiff's argument that being deprived of its right to jury trial will "for all practical purposes ... prevent ADS from having its day in court" is wholly unconvincing, for such a conclusion would presumptively invalidate all bench trials and arbitration clauses.

In addition, to the extent Plaintiff is implicitly[5] arguing that it did not knowingly waive its right to jury trial, the Court rejects that argument as well. Although the forum selection clause in this case did not specifically state that the parties would waive their right to jury trial, it would have been naive for Plaintiff to assume that Mexican courts and Mexican law provide all the same rights and procedures as the United States and Texas do. *Cf. Haynsworth,* 121 F.3d at 967-68 ("The sophisticated individuals entering into these agreements are hardly so naive as to believe that by choosing only a foreign forum and not the law to be applied therein, they thereby retain some inalienable privilege of litigating their disputes under American law."). Surely the fact that Mexico might not provide a jury was foreseeable to Plaintiff, and Plaintiff voluntarily entered the contract to choose Mexico City as the forum and Mexican law as the governing law, with all the attendant rights and procedures of the Mexican forum. Thus, Plaintiff waived the right to a jury trial under federal or state law when it entered into the contract designating Mexico City and Mexican law. The fact that Plaintiff demanded a jury in its state court petition, an act that occurred after the contract was entered, is irrelevant to whether Plaintiff waived its right to jury trial when it entered the contract.

*\*13* As a district court in the Northern District of Texas has held in the context of an arbitration agreement: "The Seventh Amendment right to a trial by jury is necessarily incident to, and predicated upon the right to a federal judicial forum. Thus, a valid arbitration provision, which waives the right to resolve a dispute through litigation in a judicial forum, implicitly waives the attendant right to a jury trial. Therefore, the Seventh Amendment is not implicated by a contractual provision that precludes access to an Article III forum." *Marsh v. First USA Bank, N.A.,* 103 F.Supp.2d 909, 921 (N.D.Tex.2000); *see also Cooper v. MRM Investment Co.,* 367 F.3d 493, 503 (6th Cir.2004) (same); *Bank One, N.A. v. Coates,* 125 F.Supp.2d 819, 834 (S.D.Miss.2001), *aff'd,* 34 Fed. Appx. 964 (5th Cir.2002) (same). The Fifth Circuit agreed with similar reasoning in *American Heritage Life Insurance Co. v. Orr,* 294 F.3d 702, 710 (5th Cir.2002): "The Seventh Amendment right to a trial by jury is limited by a valid arbitration provision that waives the right to resolve a dispute through litigation in a judicial forum. We concur with the following reasoning: The Seventh Amendment does not confer the right to a trial, but only the right to have a jury hear the case once it is determined that the litigation should proceed before a court. If the claims are properly before an arbitral forum pursuant to an arbitration agreement, the jury trial right vanishes." Though the Fifth Circuit's language refers to litigation before a court, it should reasonably be limited to litigation before a United States court. Thus, once it is determined that a party has agreed to litigate in a foreign forum that does not provide a jury trial, the jury trial right vanishes.

Accordingly, when ADS agreed to a foreign forum, it implicitly waived its right to a jury trial under federal or state law, and those rights are therefore not implicated. The Court will not invalidate the forum selection clause on this basis.

#### 4. Connection to the Parties

ADS argues that the clause is unreasonable and should not be enforced because the selected forum has no connection with any party. LLC is located in San Juan del Rio, Queretero, Mexico, while ADS is located in San Antonio, Texas. Thus, ADS contends, neither party to the contract has a connection to Mexico City. ADS asserts that simply stating that the forum selected is Mexico and one of the parties is from Mexico is an over generalization. Otherwise, it contends, any location in the United States would be a suitable forum

Case 6:11-cv-00287-LED Document 126-2 Filed 09/09/11 Page 12 of 15 PageID #: 526

Alternative Delivery Solutions, Inc. v. R.R. Donnelley & Sons Co., Not Reported in...

for disputes in which any party was a United States resident.

Defendant responds that LLC is headquartered in the city of San Juan del Rio in the state of Queretero, and it has a sales office in Mexico City. Reasonableness requires only that one of the parties have "a connection" to the contractual choice of forum, and ADS has not shown that LLC has no connection to Mexico City. LLC's sales office provides it with a strong business presence in Mexico City, and is a meaningful connection to the forum selected by the parties. In addition, LLC argues, Mexico City is a more appropriate forum for resolving international business disputes than the local courts elsewhere in Mexico, such as the place where LLC is headquartered. Finally, the agreement expressly states that it was ratified and signed by both parties in Mexico City, and the agreement expressly contemplated projects between ADS and LLC that were to take place in and around Mexico City, likely from LLC's sales office. It is disingenuous for ADS to argue that the parties and the subject of the dispute do not have substantial and meaningful connections to the selected forum sufficient for the courts of Mexico City to hear this dispute.

 *14  The Court concludes that Mexico City has a meaningful connection to the contract and this dispute to render it a reasonable forum. According to the evidence submitted by Plaintiff, the contract was to be performed in Mexico, and Mexico City was one of five cities proposed for the initial stage of the program. Defendant LLC is headquartered in Mexico and has a sales office in Mexico City. Plaintiff does not argue that Mexico City is so gravely inconvenient or unrelated to the controversy so as to render the clause unreasonable. "[W]here it can be said with reasonable assurance that at the time they entered the contract, the parties to a freely negotiated private international commercial agreement contemplated the claimed inconvenience, it is difficult to see why any such claim of inconvenience should be heard to render the forum clause inconvenient." The *Bremen,* 407 U.S. at 15. In short, Plaintiff has not satisfied its "heavy burden of proof" to demonstrate that Mexico City is a gravely inconvenient or unreasonable forum, and any inconvenience associated with litigating this case in Mexico City was clearly foreseeable at the time of contracting. *Id.* at 17-18 (absent showing that trial in the contractual forum will be so gravely difficult and inconvenient that party will for all practical purposes be deprived of its day in court, there is no basis for concluding that it would be unfair, unjust, or unreasonable to hold that party to its contract).

### 5. Lack of Adequate Remedy

Plaintiff last argues that in a Mexican civil suit, many of ADS's causes of action and damages are not recognized. For example, Plaintiff asserts that, in Mexico, there is no single business enterprise or alter ego theory, and a plaintiff cannot obtain contractual consequential damages or tort-related punitive damages. Because ADS will be deprived of its remedies, it argues that the forum selection clause should not be enforced.

In *InterAmerican Trade Corp. v. Compahnhia Fabricadora de Pecas,* 973 F.2d 487 (6th Cir.1992), the Sixth Circuit rejected similar arguments with regard to a forum selection clause designating Brazil as the forum. Although the plaintiff argued that litigation in Brazil would, as a practical matter, bar its claim because no jury trial was available, the judicial process is slow, trial by depositions is not permitted, the plaintiff would have to deposit in excess of $2.2 million as security, and judgment is generally awarded in cruzeiros, the court noted that these matters were all known or foreseeable at the time of contracting, that the Brazilian courts are fully competent, and though litigation may be more inconvenient, it would not be unjust.

Moreover, in *Haynsworth v. The Corporation,* the Fifth Circuit noted that the Supreme Court in *Scherk* "roundly rejected the notion that a forum selection clause can be circumvented by a party's asserting the unavailability of American remedies." *Haynsworth,* 121 F.3d at 967. The Fifth Circuit noted that "[t]he view that every foreign forum's remedies must duplicate those available under American law would render all forum selection clauses worthless and would severely hinder Americans' ability to participate in international commerce." *Id.* at 969. Because Plaintiff argues only that it will not have the same remedies as are available in an American forum and has not argued or demonstrated that the remedies afforded under Mexican law are so inadequate as to essentially

Case 6:11-cv-00287-LED Document 126-2 Filed 09/09/11 Page 13 of 15 PageID #: 527

Alternative Delivery Solutions, Inc. v. R.R. Donnelley & Sons Co., Not Reported in...

deprive it of its day in court, the Court rejects ADS's argument that the clause is unenforceable for lack of an adequate remedy.

**Donnelley's Motion to Dismiss**

*\*15* Donnelley also moves to dismiss on the basis of the forum selection clause. [6] Without citing any authority, Donnelley contends that, even though it is not a signatory to the agreement, it may enforce the forum selection clause because "if any claim against Donnelley based on the agreement is proper anywhere, it is proper only in Mexico City, Mexico." Donnelley Motion to Dismiss at 2-3. Donnelley further notes that, "[b]ecause Donnelley is not a signatory or participant to the Agreement, ADS is attempting to hold Donnelley liable for ADS's alleged damages through the single business enterprise and alter ego theories."

Some circuits have held that a nonsignatory to a contract containing a forum selection clause may enforce the clause if the nonsignatory is "closely related" to a signatory or the alleged conduct is closely related to the contractual relationship. *See, e .g., Lipcon v. Underwriters at Lloyd's, London,* 148 F.3d 1285, 1299 (11th Cir.1998) ("In order to bind a non-party to a forum selection clause, the party must be 'closely related' to the dispute such that it becomes 'foreseeable' that it will be bound."); *Freitsch v. Refco,* 56 F.3d 825, 827 (7th Cir.1995) ("[C]ourts in this country ... enforce forum selection clauses in favor of non-parties 'closely related' to a signatory."); *Manetti-Farrow, Inc. v. Gucci Am., Inc.,* 858 F.2d 509, 514 n. 5 (9th Cir.1988) (allowing nonsignatories to enforce clause when the alleged conduct of the non-parties is so closely related to the contractual relationship that the forum selection clause applies to all defendants). Some district courts in this circuit have also followed this approach. *See, e.g., Tex. Source Group, Inc. v. CCH, Inc.,* 967 F.Supp. 234 (S.D.Tex.1997); *see also D.B., Inc. v. Nat'l Admin. Solutions Corp.,* 2004 WL 865842 (N.D.Tex.2004); *Babine Marine LLC v. Argo,* 2000 WL 1372992 at *3 (E.D.La.2000).

Although the Court has not found any Fifth Circuit case that specifically addresses whether a nonsignatory to a contract may enforce a forum selection clause therein, the Fifth Circuit has addressed whether a nonsignatory to a contract may enforce an arbitration clause. *See Grigson v. Creative Artists Agency, L.L.C.,* 210 F.3d 524 (5th Cir.2000). In *Grigson,* the Fifth Circuit stated that, under the doctrine of equitable estoppel, a nonsignatory may compel arbitration in two circumstances: (1) when a signatory to a written agreement must rely on the terms of the written agreement in asserting its claims against the nonsignatory, or (2) when a signatory to the contract raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract. *Id.* at 527 (adopting the test formulated by the Eleventh Circuit in *MS Dealer Serv. Corp. v. Franklin,* 177 F.3d 942, 947 (11th Cir.1999)); *see also Westmoreland v. Sadoux,* 299 F.3d 462, 467, 465 (5th Cir.2002) ("We have sustained orders compelling persons who have agreed to arbitrate disputes when the party invoking the clause is a nonsignatory, but only when the party ordered to arbitrate has agreed to arbitrate disputes arising out of a contract and is suing in reliance upon that contract."). The Court has also recognized that arbitration clauses are a subset of forum selection clauses and has noted that "there is very little difference between the two." *Haynsworth,* 121 F.3d at 963. Further, as in the context of arbitration clauses, to allow a party to "have it both ways" by asserting claims intertwined with the agreement but denying the forum selection clause's applicability would "fly in the face of fairness."

*\*16* Under either the "closely related" or the *Grigson* tests, Donnelley may enforce the forum selection clause. Each of the claims alleged against Donnelley and the underlying allegations are within the scope of the forum selection clause. Further, under Plaintiff's own allegations, Donnelley and LLC are "closely related." Plaintiff alleges both single business enterprise and alter ego as bases for holding Donnelley and LLC jointly and severally liable. Further, Plaintiff treats Donnelley and LLC as virtually indistinguishable, often referring to them both simply as "Defendant." All of Donnelley's alleged conduct is closely related to the contractual relationship between the parties. Accordingly, applying the "closely related" test, Donnelley may enforce the forum selection clause.

Under the first *Grigson* test, when each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the

signatory's claims arise out of and relate directly to the written agreement such that arbitration is appropriate. Here, each of Plaintiff's claims against Donnelley makes reference to or presumes the existence of the written agreement, and thus the claims arise out of and relate directly to the contract such that the claims should be subject to the forum selection clause. Under the second *Grigson* test, when a signatory to the contract raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract. Most of Plaintiff's allegations relate solely to Donnelley or fail to distinguish between Donnelley and LLC, but each of the allegations is also dependent upon the conduct of LLC, without which there would have been no contractual relationship.

Accordingly, the Court concludes that Donnelley may also enforce the forum selection clause contained in the contract.

**Conclusion**

LLC's Motion to Dismiss (docket no. 6) is GRANTED. Defendant Donnelley's Motion to Dismiss (docket no. 5) is GRANTED. This case is DISMISSED in its entirety, and all other pending motions (including specifically docket nos. 25 and 26) are DISMISSED AS MOOT.

Footnotes

1. Plaintiff's petition states that Defendant LLC "may be served pursuant to the Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the 'Hague Convention') by delivering the Original Petition, summons and a Letter of Request for service, along with translated copies of each, to the Mexican Central Authority, the General Director of Legal Affairs of the Ministry of Foreign Affairs (la Direccion General de Asuntos Juridicos de la Secretaria de Relaciones Exteriores), Lic. Arturo Dager Gomez, Av. Ricardo Flores Magon No 1-Anexo II, Planta Alta, Colonia Tlatelolco, 06995, Mexico D.F., who will then effect service on [LLC]. In addition, pursuant to Section 17.044(a)(1) and 17.044(b) of the Texas Civil Practices and Remedies Code, the Texas Secretary of State is an agent for service of process on [LLC] because it has done substantial business in this state as set forth herein, it has not designated or maintained an agent for service of process and it does not maintain a regular place of business in this state. Therefore, [LLC] can be served through the Texas Secretary of State, who will then be directed to forward duplicate copies of the summons and this Petition by international registered mail to the corporate address of [LLC] as set forth above." Thus, though the petition alleges that both substitute service on the Secretary of State and service via the Hague Convention are proper, there is no indication that ADS has attempted to serve LLC in compliance with the Hague Convention.
2. The Supreme Court has said that it is permissible for courts to consider venue before personal jurisdiction. *Leroy v. Great W. United Corp.,* 443 U.S. 173, 180, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979); *see also Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 589-90, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991) (resolving venue issues without considering the petitioner's constitutional argument as to personal jurisdiction).
3. Section 1406(a) provides: "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought ."
4. Donnelley argues that "Plaintiff cannot use parol evidence to make the forum selection [clause] mean exactly the *opposite* of what it says. Indeed, avoiding such an absurd and unjust result is precisely why the parol evidence rule exists." *Donnelley's Reply (docket no. 17)* at 4 (emphasis in original). However, Plaintiff is not seeking to offer parol evidence to construe the forum selection clause, which would be barred by the parol evidence rule. To the contrary, Plaintiff seeks to offer extrinsic evidence to show that it was induced into agreeing to the clause by fraud, a clear exception to the parol evidence rule, and that the fraud renders the forum selection clause void. Though there may be some tension in the application of the parol evidence rule and the fraud exception, Texas courts have consistently permitted extrinsic evidence of oral representations when a party contends that it was induced to enter a contract or agree to specific provisions due to fraud.
5. The Court concludes that Plaintiff has not argued that it did not knowingly waive its right to jury trial, but because that conclusion was essential to the district court's holding in *DHX,* the Court will address it.
6. Because Donnelley has asserted Rule 12(b)(3) as a basis for its motion, Plaintiff's waiver argument is inapplicable to Donnelley's motion to dismiss.

Case 6:11-cv-00287-LED Document 126-2 Filed 09/09/11 Page 15 of 15 PageID #: 529

Alternative Delivery Solutions, Inc. v. R.R. Donnelley & Sons Co., Not Reported in...

**End of Document**

© 2011 Thomson Reuters. No claim to original U.S. Government Works.